**NATIONWIDE MUTUAL INSURANCE COMPANY, Plaintiff,**

v.

**DYNASTY SOLAR, INC., et al., Defendants.**

**No. C–89–2708 SC.**

United States District Court, N.D. California.

Oct. 31, 1990.

Gordon & Reese, San Francisco, Cal., for plaintiff.

Susan M. Carbone, Heidi L. Benas, Lynch, Loofbourrow, Helmenstine, Gilardi & Grummer, San Francisco, Cal., for Royal Globe Ins. Co. and Royal Ins. Co. of America.

Armen L. George, Wunsch & George, San Francisco, Cal., for James Bradshaw, Alfred Hendrix, Betty Hendrix, Dynasty Solar, Inc., Dynasty Mfg. Co. and Dynasty Industries, Inc.

Frank Mantia and Carolyn Mantia, Cupertino, Cal., in pro per.

## ORDER FOR PARTIAL SUMMARY JUDGMENT

CONTI, District Judge.

This action involves an insurance coverage dispute. Plaintiff Nationwide Mutual Insurance Company ("Nationwide") seeks a declaratory judgment regarding its duty to defend and indemnify various defendants involved in two separate state court actions. The underlying actions have been referred to throughout this litigation as the "Onoshi" suit[1] and the "Berry" suit.[2] Previously, the court granted partial summary judgment as to Nationwide's coverage obligations in both cases.[3] More recently, the court denied a motion to intervene by the plaintiff class in the Berry suit. The court now has before it a second Nationwide motion for partial summary judgment in which the insurer seeks a declaration that its coverage for "advertising injury" creates no duty to defend or indemnify any defendant in the Berry suit.

## BACKGROUND

As this motion concerns only the Berry suit, the relevant defendants here are certain corporate entities, as well as individuals believed to be employed by or affiliated with such entities, collectively referred to as "Dynasty".[4] The Berry suit involves a plaintiff class action against Dynasty and others for alleged fraudulent and unfair sales practices, violations of federal and state statutes regarding door-to-door sales, and other claims against Dynasty and various lending institutions arising out of Dynasty's sales of solar heating systems. More particularly, the Berry plaintiffs are a group of consumers who purchased heating units from Dynasty and claim that Dynasty engaged in deceptive and misleading practices with respect to those sales.

After the Berry suit was filed, Dynasty tendered the policy to Nationwide which has been providing a defense under a reservation of rights. There are actually four

1. Onoshi, et al. v. American Eagle Industries, Inc. et al., No. 642077, Superior Court of the State of California, County of Santa Clara.

2. Berry, et al. v. Dynasty Solar, Inc., et al., Docket No. 61239–3, Superior Court of the State of California, County of Alemeda.

3. The court held that Nationwide was not obligated to defend or indemnify any defendant in the Berry suit based on the comprehensive crime coverage provisions of its policies. The Onoshi suit involved a pair of defendants named American Eagle Industries ("AEI") and Takon Manufacturing Company ("TMC") who are related to the corporate Dynasty defendants in the Berry suit. AEI and TMC tendered the Onoshi suit to Nationwide but were defaulted in this action. In the order for partial summary judgment the court determined that AEI and TMC were not insured under any of Nationwide's policies.

4. The corporate defendants to whom the policies were issued are Dynasty Industries, Inc., Dynasty Solar, Inc., Dynasty Manufacturing Company and Pacific Solar Group. The individual defendants who Nationwide claims on information and belief were employed by or affiliated with the above entities are Alfred Hendrix, Betty Hendrix, Samuel Arvizo, James Bradshaw and Jacqueline Wyatt. On October 12, 1990, defendants Alfred Hendrix and Betty Hendrix filed a Notice of Bankruptcy and attached their voluntary petition for bankruptcy under 11 U.S.C. Chapter 7. As such they are subject to the automatic stay provision in 11 U.S.C. § 362, and this action may no longer proceed against those two defendants.

Nationwide policies relevant to this request for declaratory relief—two successive annual primary policies and two companion umbrella policies—which provided coverage for the period from June 1, 1985, until June 1, 1987. In each of the primary policies, Nationwide states:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury or *advertising injury* to which this insurance applies....

(emphasis added; original emphasis omitted). "Advertising injury" is later defined in the primary policies as:

> injury arising out of an offense committed ... in the course of the named insured's advertising activities, if such injury arises out of libel, slander, defamation, violation of right of privacy, piracy, *unfair competition,* or infringement of copyright, title or slogan.

(emphasis added). Both umbrella policies further provide that:

> "advertising offense" means liability for damages which occur during the policy period arising out of the Named Insured's advertising activities for:
>
> 1. libel, slander and defamation;
> 2. infringement of copyright or of title or of slogan;
> 3. piracy or *unfair competition* or idea misappropriation under an implied contract;
> 4. invasion of right of privacy.

The central issue for the court to decide is the reasonable interpretation of the term "unfair competition" as it appears in the policies. Nationwide argues in its motion that the term should be given its common law meaning of "palming off" activity by a business competitor and that so conceived the tort does not cover the consumer generated allegations in the *Berry* suit. Dynasty, on the other hand, urges the court to construe unfair competition according to

the California statutory definition found in the state unfair competition statute which, it argues, encompasses consumer suits for unfair business practices such as the *Berry* litigation.

## DISCUSSION

Summary judgment is proper only when there is no genuine issue of material fact or when, viewing the evidence in the light most favorable to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed.R.Civ.P. 56(c); *Jung v. FMC Corp.,* 755 F.2d 708, 710 (9th Cir. 1985). Once a summary judgment motion is made and properly supported, the adverse party may not rest on the mere allegations of his or her pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where, as here, the interpretation of a writing is at the heart of a dispute, the question traditionally is one of law for the court to decide. Schwarzer, "Summary Judgment Under the Federal Rules; Defining Issues of Material Fact," 99 F.R.D. 465, 474–475 (1982).

As already mentioned, the fundamental question before the court is the interpretation of the coverage for unfair competition under the advertising injury provision in the Nationwide policies.[5] The issue for decision can be even further narrowed. The parties are in agreement that the common law tort of unfair competition has a specific meaning—generally, palming off one's goods as those of a business adversary or passing off a competitor's product as one's own. *See Schechter Poultry v. United States,* 295 U.S. 495, 531–32, 55 S.Ct. 837, 843–44, 79 L.Ed. 1570 (1935). An essential element of the common law tort is *competitive injury. Stoiber v. Honeychuck,* 101 Cal.App.3d 903, 927, 162 Cal.Rptr. 194 (1980). It is uncontroverted that the *Berry* plaintiffs are not business competitors of

---

**5.** As an initial matter Nationwide asserts that because this issue relates to the scope of basic coverage, Dynasty as the insured has the burden of showing that the underlying claims come within the scope of basic coverage. *Royal Globe*

*Ins. Co. v. Whitaker,* 181 Cal.App.3d 532, 537, 226 Cal.Rptr. 435 (1986). Yet, because the court finds its determination of the contract question to be one purely of law, this matter regarding the burden of proof is largely irrelevant.

Dynasty. As such, it is likewise unchallenged that no advertising injury coverage exists if the common law definition of unfair competition applies to the policies at issue in this case.

On the other hand, the California Business and Professions Code § 17200 defines unfair competition broadly "to protect consumers as well as competitors" and "it is not confined to anticompetitive business practice but is equally directed toward 'the right of the *public* to protection from fraud and deceit.'" *Stoiber v. Honeychuck*, 101 Cal.App.3d at 927, 162 Cal.Rptr. 194 (citations omitted).[6] Clearly, then, the court's decision as to which of the proffered interpretations of unfair competition is appropriate will be dispositive of the advertising injury coverage question.

Dynasty's argument that the broader statutory definition of unfair competition should apply, in essence, follows a simple path. First, Dynasty indicates that under California law, an insurance policy provision "is ambiguous when it is capable of two or more constructions, both of which are reasonable." *Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal.3d 903, 912, 226 Cal.Rptr. 558, 718 P.2d 920 (1986). Dynasty then offers evidence of a dictionary definition[7] of unfair competition consistent with the definition in Cal.Bus. & Prof.Code § 17200 in order to demonstrate the reasonableness of such a construction of those terms. Indeed, Dynasty ventures to underscore the reasonableness of such a construction by equating the dictionary definition with a "layman's" understanding of the terms.[8] A reasonable interpretation of unfair competition other than the common law one having been established, so Dynasty's argument goes, the terms must be considered ambiguous as a matter of law. Once the court is led to this juncture, Dynasty points the remaining way home by directing the court to the long-settled principle of construction that any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer. *Reserve Ins. Co. v. Pisciotta*, 30 Cal.3d at 807, 180 Cal. Rptr. 628, 640 P.2d 764.

The court finds that Dynasty's argument, though not without a certain syllogistic attractiveness, fails because it neglects to adhere to other elementary principles of contract construction. Dynasty makes no effort to corroborate its construction of unfair competition by reference to the surrounding language in the Nationwide policies. Rather, it analyzes the terms almost entirely in isolation. In so doing Dynasty runs afoul of the obligation to read the disputed terms in the *context* in which they appear. "Language in a contract must be construed in the context of that instrument as a whole and in the circumstances of that case, and cannot be found to be ambiguous in the abstract." *Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal.3d at 916 n. 7, 226 Cal.Rptr. 558, 718 P.2d 920; *see also Trans America Ins. Co. v. Sayble*, 193 Cal.App.3d 1562, 1566 (1987) ("A contract must be construed as a whole without giving a distorted emphasis to isolated words and phrases."); *Cook v. Penn Mutual Life Ins. Co.*, 218 Cal.App.2d 194, 197–198, 32 Cal.Rptr. 400 (1963) ("While a policy term may appear ambiguous if viewed in isolation, there is no ambiguity if its meaning can be determined by fair inference from the policy

---

**6.** The actual definition of unfair competition in Cal.Bus. & Prof.Code § 17200 is:

unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.

Section 17500 proscribes "False and Misleading Statements" in transactions with "the public".

**7.** Dynasty chooses Webster's Third International Dictionary (Unabridged 1981) which defines un-

fair competition as "business competition effected by an act that is deceptive and in effect a fraud on the public or that otherwise violates the legal or equitable rights of a competitor or the public."

**8.** This is perhaps done in recognition that "[w]ords used in an insurance contract are to be interpreted according to the plain meaning which a layman would ordinarily attach to them." *Reserve Ins. Co. v. Pisciotta*, 30 Cal.3d 800, 803, 180 Cal.Rptr. 628, 640 P.2d 764 (1982).

terms."); Cal.Civ.Code § 1641.[9]

Reading it in context, the court detects no ambiguity in the meaning of the term unfair competition as used in Nationwide's policies. This term appears in both the primary and umbrella policies alongside a host of readily identified common law torts including libel, slander, defamation and piracy. Moreover, in the umbrella policy, unfair competition is joined by "piracy" and "misappropriation of idea" in a further designated subset of the advertising injury offenses. That subset unambiguously refers to legal rights among business rivals, and the only reasonable interpretation of unfair competition which emerges from such positioning of the terms is the common law definition relating to the taking and using as one's own that which belongs to one's competitor.

Finally, the court is further persuaded by Nationwide's contention that adoption of the statutory definition of unfair competition would render meaningless the enumerated companion torts. Dynasty admits that Cal.Bus. & Prof.Code § 17200 broadly defines unfair competition. In fact, that statute's prohibition against "unlawful, unfair or fraudulent business practice" has been held to apply to "anything that properly can be called a business practice and that at the same time is forbidden by law." *People v. McKale*, 25 Cal.3d 626, 632, 159 Cal.Rptr. 811, 602 P.2d 731 (1979). Piracy, infringement, idea misappropriation and the remaining torts almost surely would be surplusage, then, were the far reaching California statutory definition of unfair competition to apply. For the court to so construe the insurance contract it would have to abandon its responsibility, outlined in detail above, to give effect to each part of the instrument.

Several other courts have reviewed this question in nearly identical circumstances and have reached the same conclusion. In *Westfield Ins. Co. v. TWT, Inc.*, 723 F.Supp. 492, 496 (N.D.Cal.1989), the court denied an insured's request to employ the California unfair competition statute in interpreting the scope of advertising injury coverage for unfair competition. Judge Legge reasoned in *TWT* as follows:

> Courts have retained the more restrictive common law meaning of unfair competition in the interpretation of insurance policies, even when the term in a state statute has been interpreted more expansively. [citations omitted]. Here [the insured] was not in competition with [plaintiff in the underlying suit], and [plaintiff in the underlying suit] has not and could not state a claim for the tort of unfair competition on the present record. Therefore, there is no duty to defend based on the "unfair competition" policy coverage.

In *Pinetop Ins. v. Public Utility Distr.*, 676 F.Supp. 212 (E.D.Wash.1987), the court had before it language identical to that found in the Nationwide umbrella policies. The court held that the terms were unambiguous because, "in the context of these policies, 'unfair competition' is a term of art which must be taken as set forth under the narrow but well-settled common law definition." *Id.*, at 217. The reasoning in *Pinetop* was adopted in *Globe Indemnity Co. v. First American State Bank*, 720 F.Supp. 853 (W.D.Wash.1989). Again, addressing the exact language regarding advertising injury coverage for unfair competition as here, the court stated:

> the court concludes that the policy is not ambiguous ... and in the context of Globe's policy, the definition of unfair competition should not be expanded to include offenses, such as those at issue in the underlying actions, that are within the "consumer protection aura" of unfair methods of competition.

*Id.*, at 857;[10] *see also Ruder & Finn Inc. v. Seaboard Surety Co.*, 52 N.Y.2d 663, 439

---

**9.** California Civil Code § 1641 provides that "the whole of a contract is to be taken together, so as to give effect to every part, if reasonably practical, each clause helping to interpret the other."

**10.** Dynasty challenges reliance on *Pinetop* and *Globe* on the basis that those decisions interpreted the relevant policies according to the law of the state of Washington. The court finds such objection unpersuasive given the absence of California decisions on this matter, the fact that "California and Washington law are virtually indistinguishable with respect to the principles

N.Y.S.2d 858, 422 N.E.2d 518 (1981); *Seaboard v. Ralph Williams' Northwest Chrysler Plymouth, Inc.*, 81 Wash.2d 740, 504 P.2d 1139 (1973).

As a final matter, having found summary judgment appropriate on the basis of the unambiguous common law meaning of the advertising injury coverage for unfair competition, the court does not pass on Nationwide's other arguments for granting summary judgment, particularly its contention that even if Dynasty's construction of those terms is accepted, no damages covered by the policy can be recovered in the *Berry* litigation.

## CONCLUSION

In accordance with the foregoing, the court hereby GRANTS Nationwide's motion for partial summary judgment and DECLARES that Nationwide has no duty to defend or indemnify Dynasty in the *Berry* suit because of the advertising injury coverage.

IT IS SO ORDERED.

Jonathan C. Dickey, Steven S. Shupe, Brobeck, Phleger & Harrison, San Francisco, Cal., for plaintiff.

William H. Staples, Harry C. Gilbert, Capps, Staples, Ward, Hastings & Dodson, Walnut Creek, Cal., for defendant.

governing construction of insurance contracts," *Kilroy Industries v. United Pacific Ins. Co.*, 608

F.Supp. 847, 850–851 (C.D.Cal.1985), and the well-reasoned nature of those holdings.