JOHN MARKEL FORD, INC., A NEBRASKA CORPORATION, APPELLANT, V. AUTO–OWNERS INSURANCE COMPANY, APPELLEE.

543 N.W.2d 173

Filed February 9, 1996.   No. S–94–137.

James D. Sherrets and Mary M. Carnazzo, of Sherrets, Smith & Gardner, P.C., for appellant.

Thomas A. Otepka and Alison Lonsdale McGinn, of Gross & Welch, P.C., for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

CAPORALE, J.

## I. INTRODUCTION

Plaintiff-appellant, John Markel Ford, Inc., alleges that defendant-appellee, Auto-Owners Insurance Company, breached the parties' contract of insurance. The district court sustained the motion for summary judgment filed by Auto-Owners, thereby dismissing Markel Ford's action. Markel Ford then appealed to the Nebraska Court of Appeals, asserting, in summary, that the district court erred in (1) determining as a matter of law that the contract did not obligate Auto-Owners to either defend or indemnify Markel Ford in a suit brought against it by the State of Iowa, (2) determining as a matter of law that Auto-Owners did not act in bad faith in refusing to defend or indemnify Markel Ford, and (3) receiving certain evidence. We, on our own motion, removed the matter to this court under our authority to regulate the caseloads of the Court of Appeals and this court. We now affirm the judgment of the district court.

## II. SCOPE OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as

a matter of law. *C.S.B. Co. v. Isham, ante* p. 66, 541 N.W.2d 392 (1996); *Blackbird v. SDB Investments, ante* p. 13, 541 N.W.2d 25 (1995); *Gillis v. City of Madison,* 248 Neb. 873, 540 N.W.2d 114 (1995).

## III. FACTS

Markel Ford is a Nebraska corporation maintaining a place of business in Omaha, Nebraska, from which it sells new and used motor vehicles. In the course of conducting its business, it offered motor vehicles for sale or lease through advertisements which reached the Iowa market.

As a consequence, the State of Iowa, by and through its attorney general, brought suit in 1987 against Markel Ford, alleging violations of the Iowa Consumer Fraud Act and the Iowa Consumer Credit Code, which incorporates the federal Truth in Lending Act, 15 U.S.C. § 1601 et seq. (1988), and regulations promulgated thereunder. As a result, Markel Ford entered into a consent judgment requiring it to reimburse the State of Iowa $4,000 for its costs in bringing the action and to make a cash payment of $6,000 to the Iowa Attorney General's Consumer Education and Litigation Fund. In addition, Markel Ford alleges that it incurred attorney fees of $9,834.33 in defending the lawsuit.

## IV. ANALYSIS

### 1. CONTRACT THEORY

The first assignment of error, the district court's determination that as a matter of law Auto–Owners had no obligation to either defend or indemnify Markel Ford, rests on the language contained in the errors and omissions endorsement and the advertising endorsement of the insurance contract, coupled with the language of the defense clause granting Auto–Owners "the right and duty to defend . . . any suit . . . seeking damages . . . where [Auto–Owners] is liable to [Markel Ford] in case of judgment, even if any of the allegations of the suit are groundless, false or fraudulent . . . ."

### (a) Errors and Omissions Endorsement

The "Truth In Lending Errors and Omissions Endorsement" of the contract reads:

> In consideration of an additional premium and subject to all the provisions of the policy not expressly modified hereby, [Auto–Owners] agrees with [Markel Ford] as follows:
>
> . . . .
>
> [Auto–Owners] will pay on behalf of [Markel Ford] all sums which [Markel Ford] shall become legally obligated to pay as damages in an action brought solely under 15 U.S.C. Sec. 1640 (Consumer Credit Protection Act – Public Law 90–321, Title I, as amended, because of error or omission during the policy period in complying with any requirement imposed under 15 U.S.C., Section 1631 et seq.

Markel Ford contends, first, that the foregoing language expressly covers the Iowa suit and, second, that if it does not do so expressly, the language is ambiguous and thus must be construed against Auto–Owners so as to provide such coverage by implication.

### (i) Express Coverage

It is Markel Ford's position that by its express terms, the foregoing language provides coverage for any errors or omissions resulting in the failure to comply with the requirements imposed under any provision of the Consumer Credit Protection Act.

The language specifies that Auto–Owners will indemnify Markel Ford when it becomes obligated to pay damages in a suit brought pursuant to § 1640 as a result of any errors or omissions in complying with the act. Thus, under the express language, the question is whether the action brought by Iowa was an action brought solely under § 1640.

That section gives a consumer a private right of action against a creditor who fails to make the required disclosures. § 1640(a). The statute does not provide for the bringing of a suit to enforce compliance with the act, as it does not envision suits by governmental enforcement agencies; such suits are treated elsewhere. See *Tower v. Moss*, 625 F.2d 1161, 1165 (5th Cir. 1980) ("[t]he Truth in Lending Act provides not only for enforcement by the Federal Trade Commission and other federal

agencies, but it also establishes a civil cause of action by a consumer against a creditor who fails to make the required disclosures. 15 U.S.C. § 1640(a)").

Thus, Markel Ford's position that the errors and omissions language expressly obligates Auto–Owners to indemnify it directly contradicts the wording of the errors and omissions endorsement, for the language does not expressly cover the type of suit brought by Iowa. It cannot be maintained that the words "in an action brought solely under 15 U.S.C. Sec. 1640" actually mean "in any action whatsoever."

(ii) Implied Coverage

But Markel Ford further urges that if the endorsement does not by its express terms obligate Auto–Owners to defend and indemnify Markel Ford, the language is ambiguous and must be construed so as to provide such coverage. In this latter connection, Markel Ford argues that the failure of Auto–Owners to have placed a closing parenthesis in the portion of the errors and omissions endorsement describing the source of the damages it would pay renders the language ambiguous and such as to not limit the obligation of Auto–Owners to pay only those damages arising in an action brought solely under § 1640.

This argument requires a phrase–by–phrase analysis of the subject language thusly:

(1) [Auto–Owners] will pay on behalf of [Markel Ford]

(2) all sums which [Markel Ford] shall become legally obligated to pay as damages

(3) in an action brought solely under 15 U.S.C. Sec. 1640

(4) (Consumer Credit Protection Act – Public Law 90–321, Title I, as amended,

(5) because of error or omission during the policy period in complying with any requirement imposed under 15 U.S.C., Section 1631 et seq.

The first phrase unambiguously declares that Auto–Owners will pay on behalf of Markel Ford that which is described in the second phrase.

The second phrase unambiguously declares that Auto–Owners will pay on behalf of Markel Ford all damages Markel Ford is legally required to pay.

As noted earlier, the third phrase limits the type of damages

that Auto–Owners will pay on behalf of Markel Ford to those resulting from an action brought solely under § 1640.

The fourth phrase modifies § 1640 by describing the act of which § 1640 is merely a part. Public Law 90–321 encompasses the entire Consumer Credit Protection Act and has been amended several times. See, e.g., § 1640 of Consumer Credit Protection Act, Pub. L. No. 90–321, 82 Stat. 146 (1968) (amended 1974, 1976, 1980, and 1994).

The fifth phrase modifies the word "action" in the third phrase. While the action under which Markel Ford is required to pay damages must be brought under § 1640, the action is brought because Markel Ford failed to comply with the requirements of § 1631 et seq.

We therefore have a situation in which (1) Auto–Owners promises to pay any damages Markel Ford is required to pay (2) as a result of a suit brought by a consumer pursuant to § 1640 which (3) alleges that Markel Ford failed to comply with the Truth in Lending Act.

That is not the situation at hand. Here, the Iowa attorney general brought suit against Markel Ford for alleged violations of the Iowa Consumer Fraud Act and the Iowa Consumer Credit Code. Even assuming, but not deciding, that alleging violations of state law in a suit is the same thing as alleging violations of federal law, the suit brought by the Iowa attorney general is not one brought solely under § 1640, for, as noted previously, at the relevant time the federal act treated enforcement by consumers separately from enforcement by governmental agencies. Compare § 1607 with § 1640(a). While Markel Ford urges that the Iowa attorney general could be viewed as stepping into the shoes of Iowa consumers, the same could be said of the Federal Trade Commission.

In addition, Markel Ford does not meet the definition of creditor in the suit brought by the Iowa attorney general, and therefore, such a suit could not have been brought pursuant to § 1640. That section provides in part that "any *creditor* who fails to comply with any requirement imposed under this part . . . with respect to any person is liable to such person . . . ." (Emphasis supplied.) "Creditor" is defined in the federal act as referring

> only to a person who both (1) regularly extends . . . consumer credit . . . and (2) *is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness . or, if there is no such evidence of indebtedness, by agreement.*

(Emphasis supplied.) § 1602(f). In this situation, there is no consumer credit transaction between Markel Ford and the Iowa attorney general, there is no debt between them, there is no evidence of indebtedness, and there is no agreement. Plainly, Markel Ford is not a creditor in this situation, and for that additional reason, the suit by the Iowa attorney general could not have been brought pursuant to § 1640.

While it is true that an ambiguous insurance contract will be construed in favor of the insured, it is also true that an ambiguity will not be read into insuring language which is plain and unambiguous in order to construe it against the preparer of the contract. See *Winfield v. CIGNA Cos.*, 248 Neb. 24, 532 N.W.2d 284 (1995).

### (b) Advertising Endorsement

Next, Markel Ford contends that in any event, Auto–Owners was obligated to defend and indemnify Markel Ford under the language of the "Advertising Offense Liability" endorsement, reading:

> [Auto–Owners] will pay on behalf of [Markel Ford] all sums which [Markel Ford] shall become legally obligated to pay as damages because of injury which occurs in the course of [Markel Ford's] advertising activities and arises out of libel, slander, defamation, violation of right of privacy, piracy, unfair competition or infringement of copyright, title or slogan committed during the policy period.

Markel Ford argues that the Iowa lawsuit was brought on account of its advertising and that as such, it was a suit involving unfair competition, thus bringing it within the policy's coverage.

According to the pertinent language, to come within the policy the Iowa lawsuit must have been related to Markel Ford's

advertising activities and have arisen out of one of the acts enumerated in the endorsement, i.e., unfair competition.

In response to an interrogatory, Markel Ford stated that the statutes which the State of Iowa alleged Markel Ford violated are designed for the protection of unfair competition of advertisers. There is no doubt that the lawsuit was brought in regard to Markel Ford's advertising activities. The issue therefore is whether the suit arose out of unfair competition.

It is true that with regard to advertising, the definition of unfair competition has been somewhat expanded in the third Restatement of Unfair Competition to encompass the tenet that "[o]ne who, in connection with the marketing of goods or services, makes a representation relating to the actor's own goods, services, or commercial activities that is likely to deceive or mislead prospective purchasers to the likely commercial detriment of another . . . is subject to liability to the other . . . ." Restatement (Third) of Unfair Competition § 2 at 21 (1995). However, the common–law definition of unfair competition involves "palming off" one's goods as the goods of another. 1 Rudolf Callmann, The Law of Unfair Competition, Trademarks and Monopolies §§ 2.01 and 2.02 (4th ed. 1995).

Most courts which have considered the matter in the context of errors and omissions language such as is at issue here have adhered to the common–law definition. See, *Granite State Ins. Co. v. Aamco Transmissions, Inc.*, 57 F.3d 316 (3d Cir. 1995); *Nationwide Mut. Ins. Co. v. Dynasty Solar, Inc.*, 753 F. Supp. 853 (N.D. Cal. 1990); *Globe Indem. Co. v. First American State Bank*, 720 F. Supp. 853 (W.D. Wash. 1989); *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 833 P.2d 545, 10 Cal. Rptr. 2d 538 (1992); *Ruder & Finn Inc. v. Seaboard Sur. Co.*, 52 N.Y.2d 663, 422 N.E.2d 518, 439 N.Y.S.2d 858 (1981); *Seaboard v. Williams' NW Chrysler*, 81 Wash. 2d 740, 504 P.2d 1139 (1973); *A–Mark Fin. v. CIGNA Prop. & Cas.–INA*, 34 Cal. App. 4th 1179, 40 Cal. Rptr. 2d 808 (1995); *McLaughlin v. National Union Fire Ins.*, 23 Cal. App. 4th 1132, 29 Cal. Rptr. 2d 559 (1994); *Graham Resources v. Lexington Ins.*, 625 So. 2d 716 (La. App. 1993); *Chatton v. National Union Fire Ins. Co.*, 10 Cal. App. 4th 846, 13 Cal. Rptr. 2d 318 (1992); *Practice Management v. Old Dominion Ins.*, 601 So. 2d 587

(Fla. App. 1992); *Aetna Casualty v. M&S Industries*, 64 Wash. App. 916, 827 P.2d 321 (1992); *Boggs v. Whitaker, Lipp & Helea*, 56 Wash. App. 583, 784 P.2d 1273 (1990).

Indeed, many courts have stated that the term "unfair competition" does not refer to conduct prohibited by unfair business practices statutes, i.e., the Iowa consumer protection statutes that Markel Ford was alleged to have violated. See, e.g., *Bank of the West, supra*; *Graham Resources, supra*; *Boggs, supra*. We agree.

Neither is the phrase "unfair competition" ambiguous in this context. As the federal district court stated in *Nationwide Mut. Ins. Co.*, 753 F. Supp. at 857: "Reading it in context, the court detects no ambiguity in the meaning of the term unfair competition as used in [the insurer's] policies. This term appears . . . alongside a host of readily identified common law torts including libel, slander, defamation and piracy." As observed in *State v. Kipf*, 234 Neb. 227, 234, 450 N.W.2d 397, 404 (1990), "like people, words are known by the company they keep . . . and thus take meaning from the words with which they are associated."

The suit brought by Iowa therefore was not one for unfair competition as the term is used in the insurance contract.

### (c) Resolution

The Iowa lawsuit not being covered by either the errors and omissions endorsement or the advertising endorsement, it necessarily follows that the district court did not err in concluding as a matter of law that Auto–Owners had no contractual obligation to indemnify Markel Ford. Because the defense clause obligates Auto–Owners to defend only those suits the allegations of which it is obligated to indemnify against, neither was Auto–Owners contractually obligated to defend the Iowa suit.

### 2. Bad Faith Theory

The second assignment of error asserts the district court nonetheless wrongly ruled that Auto–Owners did not act in bad faith in failing to defend and indemnify Markel Ford.

In order to claim bad faith in Auto–Owners' failure to defend or indemnify it, Markel Ford must show an absence of a

reasonable basis by Auto–Owners for denying Markel Ford the benefits of the insurance contract and must prove Auto–Owners' knowledge or reckless disregard of a lack of a reasonable basis for the denial. See, *Ruwe v. Farmers Mut. United Ins. Co.*, 238 Neb. 67, 469 N.W.2d 129 (1991); *Braesch v. Union Ins. Co.*, 237 Neb. 44, 464 N.W.2d 769 (1991). As established in part IV(1) above, Auto–Owners had a reasonable basis for refusing to indemnify Markel Ford; thus, it did not act in bad faith in that regard.

However, as Markel Ford points out, an insurer's duty to defend is broader than its duty to indemnify. See, *Union Ins. Co. v. Land and Sky, Inc.*, 247 Neb. 696, 529 N.W.2d 773 (1995); *Allied Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 243 Neb. 779, 502 N.W.2d 484 (1993). An insurer has a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy. *Allstate Ins. Co. v. Novak*, 210 Neb. 184, 313 N.W.2d 636 (1981). More specifically, as suggested by one writer, under *Novak*, an insurer is obligated to defend if (1) the allegations of the complaint, if true, would obligate the insurer to indemnify, or (2) a reasonable investigation of the actual facts by the insurer would or does disclose facts that would obligate the insurer to indemnify. Robert Works, Nebraska Property & Liability Insurance Law § 11.2.2 (1985). See, *Union Ins. Co., supra* (insurer has duty to defend its insured whenever it ascertains facts which give rise to potential of liability under policy).

As Auto–Owners had no duty to indemnify Markel Ford and as a reasonable investigation of the facts would have added nothing to what was contained in the complaint of the Iowa lawsuit, Auto–Owners was under no duty to defend Markel Ford in the Iowa lawsuit. In *Seaboard v. Williams' NW Chrysler*, 81 Wash. 2d 740, 504 P.2d 1139 (1973), the attorney general of Washington brought suit against an automobile dealer, seeking to enjoin alleged unfair methods of competition and unfair or deceptive acts or practices and to secure a judgment for penalties as provided by statute. The insurer of the automobile dealer then brought a declaratory judgment action, seeking a judicial determination that it had no duty to defend the suit brought by the attorney general. The insurance contract

provided that the insurance company would pay on behalf of the automobile dealer any sums which the automobile dealer was obligated to pay as the result of a final judgment for money damages resulting from, inter alia, unfair competition. The insurer also undertook to defend any suit seeking damages for unfair competition, even if such suit was groundless, false, or fraudulent. The Supreme Court of Washington held that the insurer was under no duty to defend the automobile dealer, as the suit by the attorney general was not one for unfair competition and thus did not come within the coverage of the policy.

In *A-Mark Fin. v. CIGNA Prop. & Cas.-INA*, 34 Cal. App. 4th 1179, 40 Cal. Rptr. 2d 808 (1995), an insured alleged that its insurer had a duty to defend it in a lawsuit which the insured claimed involved unfair competition. The insured argued that as *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 833 P.2d 545, 10 Cal. Rptr. 2d 538 (1992), which held that the type of suit the insured was involved in did not constitute unfair competition, was decided after its suit had commenced, a potential of liability existed, triggering the insurer's duty to defend. The California Court of Appeal disagreed, stating:

> In *State Farm*, for example, coverage turned on the interpretation by the court of a policy term. The insured argued that State Farm had a duty to defend because "the term 'accident' was ambiguous, giving rise to potential liability." . . . The court disagreed, holding that "[a]ppellants misapprehend the notion of 'potential liability.' Potential liability deals with whether the insurer owes coverage to the insured based upon the facts known to the insurer or facts pleaded in the complaint, even if false. . . . Here, any potential for liability did not arise from disputed facts, but hinged on resolution of a legal question, i.e., whether the undisputed facts constituted an 'accident' during the policy period. We know of no case suggesting that an insurer has a duty to defend where the only potential for liability turns on resolution of a legal question." . . .
>
> . . . .
>
> We agree with the authorities cited above that a

"potential for indemnity" cannot be based on an unresolved dispute concerning a purely legal question or question of policy interpretation when the question is resolved favorably to the insurer. To hold otherwise would put the insurer in an untenable position. Rarely has a legal issue arising in the context of a coverage dispute been resolved with absolute finality. Thus, the insurer would be required to provide a defense every time a demand was made, no matter how implausible the theory on which it was based.

(Citations omitted.) *A–Mark Fin.*, 34 Cal. App. 4th at 1191–92, 40 Cal. Rptr. 2d at 815–16.

Accordingly, the district court did not err in concluding as a matter of law that Auto–Owners did not act in bad faith in refusing to defend or indemnify Markel Ford.

### 3. EVIDENTIAL RULINGS

The third and final assignment of error claims the district court improperly received five exhibits into evidence because foundation for their admission was lacking.

In this context, the summary judgment hearing was similar to a bench trial of an action at law. Ordinarily, the erroneous admission of evidence in a bench trial of a law action is not reversible error if other relevant evidence, admitted without objection or properly admitted over objection, sustains the trial court's necessary factual findings. *Anderson/Couvillon v. Nebraska Dept. of Soc. Servs.*, 248 Neb. 651, 538 N.W.2d 732 (1995); *Miles v. Box Butte County*, 241 Neb. 588, 489 N.W.2d 829 (1992); *Maresh v. State*, 241 Neb. 496, 489 N.W.2d 298 (1992). We apply the same reasoning to the erroneous admission of evidence on a summary judgment hearing. Here, the other evidence which was admitted without objection from Markel Ford, including the insurance policy, the petition in the Iowa lawsuit, the consent judgment, the affidavit of an assistant attorney general of Iowa, and the affidavit of the president of Markel Ford, was sufficient to sustain the district court's ruling. Therefore, even if the questioned exhibits were erroneously admitted, a matter we do not decide, the error was not prejudicial and thus provides no basis for reversal. See *Jeffres*

*v. Countryside Homes*, 220 Neb. 26, 367 N.W.2d 728 (1985) (if admission of questioned evidence erroneous, error harmless as other sufficient, competent, and relevant evidence sustained judgment).

## V. JUDGMENT

As the record fails to sustain any assignment of error, the judgment of the district court is affirmed.

AFFIRMED.

WHITE, C.J., dissenting.

The majority affirmed the district court's granting of a summary judgment in favor of Auto–Owners Insurance Company. Because I find the term "unfair competition" set forth in the "Advertising Offense Liability" portion of the contract ambiguous, I respectfully dissent.

An ambiguous term in an insurance policy will be construed in favor of the insured. *Design Data Corp. v. Maryland Cas. Co.*, 243 Neb. 945, 503 N.W.2d 552 (1993). An ambiguity in an insurance policy exists when the policy can be interpreted to have two or more reasonable meanings. *Lumbard v. Western Fire Ins. Co.*, 221 Neb. 804, 381 N.W.2d 117 (1986).

The majority sets forth two different interpretations of the phrase "unfair competition." The majority first refers to an expanded definition as found in the Restatement (Third) of Unfair Competition, and then references to the narrower, common–law definition. These are two reasonable meanings, and the phrase "unfair competition" is therefore an ambiguous term in the parties' insurance contract. John Markel Ford should have been entitled to the broader definition. Nonetheless, the majority found no ambiguity and applied the common–law definition.

Applying the broader definition of "unfair competition," at the very least, creates a question of material fact as to whether the suit brought by the State of Iowa against John Markel Ford was one of unfair competition, therefore requiring Auto–Owners Insurance Company to defend and indemnify. Summary judgment should have been denied.

LANPHIER, J., joins in this dissent.