ERNEST G. SCHIFFERN AND ROSEANNE D. SCHIFFERN, PERSONAL REPRESENTATIVES OF THE ESTATE OF DALE SCHIFFERN, DECEASED, APPELLANTS, V. NIOBRARA VALLEY ELECTRIC MEMBERSHIP CORPORATION, APPELLEE.

547 N.W.2d 478

Filed May 10, 1996.   No. S-94-193.

James Widtfeldt for appellants.

Steven E. Guenzel, of Barlow, Johnson, Flodman, Sutter, Guenzel & Eske, for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, and CONNOLLY, JJ.

CONNOLLY, J.

The estate of Dale Schiffern brought this wrongful death action against Niobrara Valley Electric Membership Corporation (Niobrara), alleging that Niobrara's agents negligently caused Schiffern's death. The trial court granted Niobrara's motion for summary judgment, and the Schiffern estate appeals. Because there is a genuine issue of fact as to the degree of Schiffern's negligence as compared with Niobrara's, we reverse the district court's order of summary judgment, and remand for further proceedings.

## FACTUAL BACKGROUND

Schiffern was the operator of a vehicle in which Edgar Tunender was a passenger. The vehicle that Schiffern was operating struck Niobrara's parked truck. As a result of the collision, Tunender and Schiffern were both killed. Tunender's estate sued Niobrara and recovered $19,614.36.

The Schiffern estate brought the present action against Niobrara. The estate filed a motion for partial summary judgment on the issue of Niobrara's negligence. Likewise, Niobrara filed a motion for summary judgment alleging that Schiffern's contributory negligence should bar his recovery as a matter of law.

In the summary judgment proceedings in the district court, Niobrara offered, inter alia, the bill of exceptions from the Tunender trial. The following facts have been gleaned from the Tunender bill of exceptions:

### ACCIDENT

In the early morning hours of March 12, 1989, Niobrara received reports of power outages in the area north of Atkinson, Nebraska. At this time, the area surrounding Atkinson was enveloped in a thick fog. Two of Niobrara's employees, Ron Clark and Mick Humpal, were on call that night.

According to Clark's testimony, Clark and Humpal went to a utility pole north of Atkinson to repair the fault in the electrical line. Because of the fog, Clark parked the truck facing oncoming traffic with the brightest headlights on and as close to the utility pole as possible. Clark testified that he pulled the

truck as far off the highway as he could, but remained partly in the lane of oncoming traffic because he was afraid of becoming stuck in the ditch. Trooper Keith Rodaway, who was qualified as an accident reconstruction expert and who investigated the accident scene, estimated that the east side of the truck was 3 feet from the west edge of the pavement.

Neither Clark nor Humpal could recall whether or not the emergency strobe light on the top of the utility truck had been turned on. Nevertheless, Humpal left the truck to repair the electrical fault, while Clark stayed in the truck. After resetting the device, Humpal was headed to the back of the truck to replace some equipment when he heard a high-pitched squeal and saw the truck go flying by him. The Schiffern car, which was proceeding south, hit the utility truck head on. The Niobrara truck was thrown 38 feet by the impact. The accident killed both Tunender and Schiffern.

### Speed of Schiffern Car

The officers who examined the scene of the accident found tire skid marks measuring 104 feet. During the Tunender trial, Dr. Ted Sokol, an accident reconstruction expert, testified that the very lowest possible range of speed for the Schiffern car immediately preceding impact was 32 to 41 miles per hour. Taking into account the braking distance indicated by the length of the skid marks, Sokol conservatively estimated that the speed of the car prior to the application of brakes was, at a minimum, 52 to 60 miles per hour. Furthermore, Rodaway testified that one of the causes of the accident was the "speed for the conditions of the environment."

Also during the Tunender trial, various law enforcement officers, ambulance drivers, Humpal, and Clark testified concerning visibility during the time at which the accident occurred. All of these parties testified that visibility was poor, and most testified that they thought that 35 miles per hour was the absolute maximum safe speed.

### Effect of Lights of Niobrara Vehicle

The experts also testified on what effect the fog, in combination with the headlights, was likely to have on an approaching motorist. Rodaway testified that another cause of the acci-

dent was the "placement of the vehicles on the roadway." Explaining his attribution of cause to the placement of the vehicles, Rodaway stated:

Placement of the vehicles in this particular situation presented an unusual environment for a driver. In other words, if I put the vehicle in this position, I expect it to be on a certain place on the road, and when I have the environment that I have, if I can't respond to that correctly, then this contributes to the accident.

Rodaway found two problems with the placement of the vehicles. First, the driver of an approaching vehicle might experience "night vision blindness" from the strength of the long-range headlights. Second, Rodaway testified:

All defensive tactics say go to the right. If the person in front of you has gone across your lane, and you try to go to the left of him, and he now realizes now [sic] what he has done, and he tries to go back into his lane, you may end up having a collision on the wrong side of the road for you, just because you are trying to avoid that gentleman. Always teach go to the right.

However, Sokol disagreed with Rodaway's opinions. With regard to the night blindness issue, Sokol testified that night blindness did not play a role because "if you have ever seen car headlights approach you in a fog, they are very, very dim, and are not bright at all, so you don't have a night blindness." In fact, Sokol testified, "The lights of the truck were simply a visible indicator to the approaching driver of the position of the vehicle. It in no way blinded the approaching driver of that Mustang." Second, Sokol discounted Rodaway's opinion that the defensive driving technique of steering to the right may have contributed to the accident, stating that in his opinion, Schiffern was not intentionally steering to the right.

### MOTIONS FOR SUMMARY JUDGMENT

The Schiffern estate filed a motion for partial summary judgment on the issue of Niobrara's negligence. Niobrara filed a motion for summary judgment alleging that Schiffern's contributory negligence barred recovery as a matter of law. At the hearing on the estate's motion for partial summary judgment

and Niobrara's motion for summary judgment, the district court received the bill of exceptions from the Tunender trial. The estate did not object to receipt of this evidence. The district court granted both the estate's motion for partial summary judgment and Niobrara's motion for summary judgment, resulting in judgment for Niobrara. Niobrara does not appeal the grant of summary judgment on the issue of its negligence. The estate appeals.

## ASSIGNMENTS OF ERROR

The Schiffern estate's assignments of error, summarized, are as follows: (1) The trial court erred in sustaining Niobrara's motion for summary judgment, (2) the court's order was against the law and the evidence, (3) the court erred in determining that Schiffern was speeding before applying the brakes and colliding with the truck, (4) the court erred in drawing conclusions from the evidence adduced in the Tunender trial, and (5) the evidence from the Tunender trial was improperly received because collateral estoppel does not apply.

## STANDARD OF REVIEW

To entitle a defendant to summary judgment on the issue of contributory negligence, the defendant has the burden of proving, under the facts viewed most favorably to the plaintiff, that (1) the plaintiff's contributory negligence was more than slight as a matter of law or (2) the defendant's negligence was not gross in comparison to the plaintiff's negligence as a matter of law. *John v. ∞ (Infinity) S Development Co.*, 234 Neb. 190, 450 N.W.2d 199 (1990).

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Zion Wheel Baptist Church v. Herzog*, 249 Neb. 352, 543 N.W.2d 445 (1996); *John Markel Ford v. Auto-Owners Ins. Co.*, 249 Neb. 286, 543 N.W.2d 173 (1996); *Kocsis v. Harrison*, 249 Neb. 274, 543 N.W.2d 164 (1996).

## ANALYSIS

We begin by noting that the law in Nebraska on contributory negligence has changed since the time at which this action arose. Under the present law, a plaintiff's contributory negligence "diminish[es] proportionately the amount awarded as damages for an injury attributable to the claimant's contributory negligence" but does not bar recovery unless the plaintiff's share of fault is greater than or equal to the defendant's. Neb. Rev. Stat. § 25-21,185.09 (Reissue 1995). However, Neb. Rev. Stat. § 25-21,185 (Reissue 1995) sets forth the law in effect for actions arising prior to the new comparative negligence scheme. Section 25-21,185 provides:

> In all actions accruing before February 8, 1992, brought to recover damages for injuries to a person or to property caused by the negligence or act or omission giving rise to strict liability in tort of another, *the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery when the contributory negligence of the plaintiff was slight and the negligence or act or omission giving rise to strict liability in tort of the defendant was gross in comparison*, but the contributory negligence of the plaintiff shall be considered by the jury in the mitigation of damages in proportion to the amount of contributory negligence attributable to the plaintiff, and all questions of negligence or act or omission giving rise to strict liability in tort and contributory negligence shall be for the jury.

(Emphasis supplied.)

Thus, this court has previously concluded that a plaintiff may be barred from recovering as a matter of law if his or her contributory negligence is more than slight and the defendant's negligence was not gross in comparison. See, *Birchem v. Eggers*, 236 Neb 775, 463 N.W.2d 824 (1990); *Hines v. Pollock*, 229 Neb. 614, 428 N.W.2d 207 (1988); *Krul v. Harless*, 222 Neb. 313, 383 N.W.2d 744 (1986). Additionally, we have held, with regard to the predecessor of this statute, that the words "slight" and "gross" are comparative terms, and the negligence of the plaintiff or the defendant is not to

be evaluated as slight, gross, or otherwise, standing alone.
*Niemeyer v. Tichota*, 190 Neb. 775, 212 N.W.2d 557 (1973).

The trial court's rationale for granting Niobrara's motion for summary judgment was explained as follows:

> The court is mindful that comparative negligence is a question of fact for the jury. Therefore, summary judgment is proper only if the facts, and all reasonable inferences flowing therefrom, viewed in the light most favorable to the Schifferns, will lead a reasonable mind to only one possible conclusion. This is an extremely high burden to overcome.
>
> However, this court concludes that any reasonable mind would arrive at only one conclusion on this issue. That three-part conclusion, which the court determines as a matter of law, is: (1) that the decedent was negligent in operating his vehicle at a speed greater than was reasonable and prudent under the conditions then existing, (2) that this negligence was a proximate cause of the accident, although not the sole proximate cause, and (3) that the negligence of the decedent was more than slight in comparison to the negligence of Niobrara.
>
> The court sympathizes with the Schifferns concerning the loss of their son. However, the law rejects sympathy as a basis for legal results. A legal decision must be based upon the applicable facts and law of the case. The *Tunender* decision established Niobrara's negligence. The evidence here, presented originally in *Tunender*, demonstrates the decedent's concurring negligence. Under the "slight/gross" standard applicable to this case, the law simply provides no basis for recovery. Accordingly, Niobrara's motion for summary judgment will be sustained and the Schifferns' petition will be dismissed with prejudice.

We must determine if the Schiffern estate is barred as a matter of law from recovering because of the level of Schiffern's contributory negligence. We have previously recognized that to obtain summary judgment on the issue of contributory negligence, the defendant has the burden of proving, under the facts viewed most favorably to the plaintiff, that (1)

the plaintiff's contributory negligence was more than slight as a matter of law or (2) the defendant's negligence was not gross in comparison to the plaintiff's negligence as a matter of law. *John v. ∞ (Infinity) S Development Co.*, 234 Neb. 190, 450 N.W.2d 199 (1990).

However, as always, summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Zion Wheel Baptist Church v. Herzog*, 249 Neb. 352, 543 N.W.2d 445 (1996); *John Markel Ford v. Auto-Owners Ins. Co.*, 249 Neb. 286, 543 N.W.2d 173 (1996); *Kocsis v. Harrison*, 249 Neb. 274, 543 N.W.2d 164 (1996). We must, therefore, determine whether any genuine issues of material fact remain.

At the hearing on the motion for summary judgment, Niobrara introduced evidence of Schiffern's contributory negligence by introducing the entire bill of exceptions from the Tunender trial. The Schiffern estate did not object to its receipt. Nevertheless, the estate now complains of the receipt of the bill of exceptions of the Tunender trial. We have previously held that failure to make a timely objection waives the right to assert prejudicial error on appeal. *Barks v. Cosgriff Co.*, 247 Neb. 660, 529 N.W.2d 749 (1995); *Nichols v. Busse*, 243 Neb. 811, 503 N.W.2d 173 (1993). As the estate failed to object to the receipt of the bill of exceptions from the Tunender trial, we will not consider its receipt as error.

Furthermore, the Schiffern estate objects to the receipt of the testimony from the Tunender trial as an improper use of collateral estoppel. The collateral estoppel doctrine precludes the same parties from retrying an issue of ultimate fact which has been determined by a valid and final judgment in another case. *Farm Credit Bank v. Stute*, 248 Neb. 573, 537 N.W.2d 496 (1995); *In re Estate of Wagner*, 246 Neb. 625, 522 N.W.2d 159 (1994). The bill of exceptions from the Tunender trial was not received on the basis of collateral estoppel because the estate was not a party to the Tunender trial. Instead, the testimony from the Tunender trial was introduced

as evidence of Schiffern's negligence, and the estate failed to object to its receipt. Therefore, the estate is barred from objecting to its use.

The evidence adduced during the Tunender trial demonstrates that Schiffern was contributorily negligent. Rodaway testified that one of the causes for the accident was the "speed for the conditions of the environment." Furthermore, Sokol testified that prior to the application of brakes, the minimum speed of Schiffern's vehicle was 52 to 60 miles per hour. At the hearing on the motion for summary judgment, the estate did not introduce evidence to contradict Sokol's testimony from the Tunender trial. Thus, there was uncontroverted evidence in the record to establish contributory negligence on the part of Schiffern.

However, the experts disagreed as to the effect the placement of the Niobrara vehicle had upon Schiffern. Rodaway testified that the accident would not likely have occurred absent the placement of the vehicles. Rodaway reasoned that Schiffern may have been temporarily blinded by the oncoming headlights. Additionally, he asserted that defensive driving technique would have caused Schiffern to steer to the right—right into the path of Niobrara's truck.

On the other hand, Sokol discounted the effect of the placement of the vehicle, saying that because of the fog, the headlights would not have had much impact, because the fog itself would have made the light hazy rather than bright. Likewise, he disagreed with Rodaway's opinion that Schiffern may have steered to the right in the hopes of avoiding the collision.

Thus, the evidence introduced at the summary judgment hearing indicates a conflict in expert testimony on the issue of the effect of the bright headlights on Schiffern. Notwithstanding the evidence of speed and conditions, Rodaway testified that the accident may not have occurred in the absence of the placement of the truck. Sokol disagreed. In order to resolve the issue of the relative negligence of Niobrara and Schiffern, the issue of the effect of the placement of the utility truck must be resolved.

Having determined that the testimony received from the experts in the Tunender trial conflicts, we conclude that a genuine issue of material fact exists concerning the relative degrees of negligence of Niobrara and Schiffern. The presence of a genuine issue of material fact precludes the granting of the summary judgment; therefore, the trial court erred.

## CONCLUSION

As the conflict in expert testimony creates a genuine issue of material fact, the district court erred in granting summary judgment. Therefore, we reverse, and remand for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

GERRARD, J., not participating.