REQUESTED BY: Deb Thomas, Director Department of Health and Human Services Regulation and Licensure
QUESTIONS
You have asked the following questions concerning Neb. Rev. Stat. § 71-1721:
 1. Aside from the limitations in Schedule II, are Advanced Registered Nurse Practitioners ("ARNPs") authorized under Nebraska law to prescribe controlled substances in Schedules III, IV, and V?
 2. Are ARNPs authorized under Nebraska law to dispense sample medications which are controlled substances?
 3. If the answer to No. 2 is in the affirmative, which schedules of sample medications controlled are ARNPs authorized to dispense?
CONCLUSIONS:
1. Yes, ARNPs are authorized under Nebraska law to prescribe Schedule III, IV, and V controlled substances provided the prescribing ARNP has a current controlled substance registration from the Department as required by Neb. Rev. Stat. § 28-407.
2. Yes, an ARNP with a current controlled substance registration may dispense, incident to practice only, sample controlled substances which are provided by the manufacturer and are provided at no charge to the patient.
3. Schedule III, IV, and V controlled substance samples may be dispensed. Dispensing of any Schedule II samples is permitted only for a maximum 72 hour supply for purposes of pain control.
ANALYSIS:
Neb. Rev. Stat. § 71-1721 provides in relevant part as follows:
 . . . . Advanced registered nurse practitioner practice shall mean health promotion, health supervision, illness prevention and diagnosis, treatment, and management of common health problems and chronic conditions, including:
. . .
 (2) Dispensing, incident to practice only, sample medications which are provided by the manufacturer and are provided at no charge to the patient; and
 (3) Prescribing therapeutic measures and medications, except controlled substances listed in Schedule II of section 28-405 not otherwise provided for in this section, related to health conditions within the scope of practice. An advanced registered nurse practitioner may prescribe controlled substances listed in Schedule II of section 28-405 used for pain control for a maximum seventy-two-hour supply if any subsequent renewal of such prescription is by a licensed physician.
Neb. Rev. Stat. § 71-1721 is part of the Nebraska Advanced Registered Nurse Practitioner Act. The above language of Section 71-1721 was adopted as part of Laws 1996, LB 414, which was a comprehensive amendment of previous Nebraska nurse practitioner licensing statutes.
"Controlled substances" are defined by Neb. Rev. Stat. §28-401 as being "a drug, substance, or immediate precursor in Schedules I to V of Section 28-405." Neb. Rev. Stat. §28-405, which is part of the Nebraska Uniform Controlled Substances Act, lists all drugs and substances which are controlled substances and classifies them under one of five schedules. Schedule I controlled substances are substances which have a high potential for abuse, and which have no accepted medical use in treatment or lack accepted safety for use in treatment under medical supervision. Schedules II through V controlled substances are drugs which have accepted medical use in treatment but varying potential for abuse and addiction depending on the particular classification schedule. Schedule II controlled substances are those with high potential for abuse and dependence. Schedule III, IV, and V controlled substances have lesser potential for abuse and dependence with Schedule V controlled substances having the least potential for abuse and dependence of all the controlled substance schedules.
Section 71-1721 uses the word "medications", rather than the term "controlled substances", for ARNP prescribing and dispensing authority. The term "medications" is not specifically defined in the Advanced Registered Nurse Practitioner Act. The term "medications" is also not defined by Neb. Rev. Stat. §49-801, which is the statute containing general definitions for use with all Nebraska statutes. Thus, the question is the proper statutory construction in determining whether the word "medications" includes "controlled substances" in the limited context of Neb. Rev. Stat. § 71-1721.
In construing a statute, statutes relating to the same subject matter are to be construed together so as to maintain a consistent and sensible scheme. Chrysler Corp. v. Lee JanssenMotor Co., 248 Neb. 281 (1995). As stated by the Nebraska Supreme Court, "Like people, words are known by the company they keep . . . and thus take meaning from the words with which they are associated." John Markel Ford v. Auto-Owners Ins. Co.,249 Neb. 286 (1996).
The company kept by the word "medications" in Section 71-1721
is the word "prescribing". The Legislature also used the word "except" to place a limit on ARNP medication prescribing authority for Schedule II controlled substances. The word "except" appears in context as an exclusion from broader "prescribing medications" authority.
The terms "prescribe" and "prescription" are terms of art. The terms "prescribe" and "prescription", when referring to drugs, typically mean drugs which can be obtained from pharmacies only by an order from a licensed medical practitioner who has legal authority to issue such an order or "prescription". A "prescription" from an authorized licensed practitioner isn't needed for a patient or consumer to obtain noncontrolled, over-the-counter medication from a pharmacy.
A "prescription" is needed for a pharmacist to dispense a controlled substance. See, Neb. Rev. Stat. § 28-414. A "prescription" is also needed for certain "legend" drugs. Neb. Rev. Stat. § 28-1437. Section 28-401(11) of the Nebraska Uniform Controlled Substance Act defines "prescribe" as the act of a "medical practitioner licensed under the laws of this state in issuing an order, prescription, or direction to a pharmacist or pharmacy to dispense a drug as required by the laws of this state". Thus, the Legislature's use of the words "prescribing" in company with "medications" in Section 71-1721 signifies an intention to grant ARNPs broader authority than simply placing orders for over-the-counter medications which patients could obtain on their own absent any order from an ARNP.
It also makes little sense that the Legislature intended ARNPs to have limited Schedule II pain prescribing authority while simultaneously intending that ARNPs have no prescribing authority for Schedule III through V controlled substances, which latter schedules are for less addictive and less dangerous drugs than Schedule II drugs. There are controlled substances in the Schedules III through V, such as hydrocodone and dextropropoxyphene appearing in Schedules III and IV, which can be used for pain control. The logic of Section 71-1721's limit on ARNP prescribing Schedule II prescribing authority is not to require ARNPs to prescribe highly addictive and dangerous Schedule II drugs, instead of less addictive and dangerous Schedule III through V drugs, to alleviate pain. Rather, the logic of the statutory limit on Schedule II prescribing authority is that it is intended to be an exclusion from broader general authority to prescribe controlled substances.
Thus, the reasonable and necessary construction of Section71-1721 is that ARNPs may prescribe Schedule III through V controlled substances. ARNPs have limited Schedule II prescribing authority as specified by the statute.
Applying the above logic, ARNPs may also dispense Schedule III through V sample controlled substances, incident to practice only. The prescribing restrictions on Schedule II controlled substances also apply to dispensing of sample medications. There is no indication of any Legislative intent to permit ARNPs to dispense more or less than they could prescribe. Rather, the intent appears to be to allow ARNPs to dispense what they can prescribe provided what they are dispensing is only incident to practice, are samples which are provided by the manufacturer, and there is no charge to the patient for the samples.
A final caveat is mentioned. Section 28-407(1) of the Nebraska Uniform Controlled Substance Act requires every person who prescribes, distributes, or dispenses controlled substances to obtain a controlled substance registration issued by the Department in accordance with the Department's rules and regulations.
Among the purposes of the Uniform Controlled Substances Act is the following:
 Another object of this Act is to establish a closed regulatory system for the legitimate handlers of controlled drugs in order to better prevent illicit drug diversion. This system will require that these individuals register with a designated State agency, maintain records, and make biennial inventories of all controlled drug stocks.
Uniform Controlled Substances Act, Prefatory Note.
Even though Neb. Rev. Stat. § 71-1721 provides a general scope of authority for ARNPs to prescribe controlled substances as discussed in this opinion, Section 28-407 imposes the additional specific requirement that each ARNP possess a controlled substance registration issued by the Department prior to actually prescribing or dispensing controlled substances. Title 172, Neb. Admin. Code, Chapter 129 contains the Department's regulations for controlled substance registrations. Specifically, 172 NAC 129:003.01B lists the categories of licensed professionals who may obtain a controlled substances registration from the Department under the authority of Neb. Rev. Stat. § 28-407. 172 NAC 129:003.01B does not include current Nebraska licensed ARNPs among the licensed professionals who can obtain a controlled substance registration from the Department. Thus, the Department may want to consider reviewing and amending its regulations.
Sincerely,
 DON STENBERG Attorney General
 James D. Smith Assistant Attorney General
APPROVED BY:
Don Stenberg
Attorney General