records, I would agree that she had no reason to complain.[27] But this case does not present those facts. Because law enforcement agents sought Wiedeman's records solely to incriminate her in a targeted investigation, the search was not an administrative inspection and did not fall within the special needs exception.

In short, targeted criminal investigations are distinct from other types of government searches. And once a court recognizes that citizens have legitimate expectations of privacy in their prescription records, which many courts have done, the Fourth Amendment requires probable cause and a warrant before intruding on that interest. Because I believe that Wiedeman had a legitimate expectation of privacy in her prescription records, she was entitled to challenge the search of these records without a warrant and her challenge had merit.

The Fourth Amendment does not prevent law enforcement agents from searching private information for a criminal investigation if the agents comply with its procedural protections of that information. I think most Nebraskans will be surprised to learn that by filling their prescription orders, they have publicly disclosed the medical information revealed by those orders. They likely did not suspect that a prosecutor, without any judicial oversight, could obtain their prescription records merely by issuing a subpoena. For these reasons, I cannot join the majority's opinion.

---

[27] See, *Burger, supra* note 18; *Stone v. Stow*, 64 Ohio St. 3d 156, 593 N.E.2d 294 (1992).

---

MARY KAY YOUNG, AN INDIVIDUAL, APPELLANT, V.
GOVIER & MILONE, L.L.P., ET AL., APPELLEES.
___ N.W.2d ___

Filed July 12, 2013.    No. S-11-959.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show

that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

2. **Judges: Recusal: Appeal and Error.** A motion requesting a judge to recuse himself or herself on the ground of bias or prejudice is addressed to the discretion of the judge, and an order overruling such a motion will be affirmed on appeal unless the record establishes bias or prejudice as a matter of law.

3. **Attorney and Client: Malpractice: Negligence: Proof.** A client who has agreed to the settlement of an action is not barred from recovering against his or her attorney for malpractice if the client can establish that the settlement agreement was the product of the attorney's negligence.

4. **Malpractice: Attorney and Client: Negligence: Proof: Proximate Cause: Damages.** In a civil action for legal malpractice, a plaintiff alleging professional negligence on the part of an attorney must prove three elements: (1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) that such negligence resulted in and was the proximate cause of loss to the client.

5. **Malpractice: Attorney and Client.** In a legal malpractice action, the required standard of conduct is that the attorney exercise such skill, diligence, and knowledge as that commonly possessed by attorneys acting in similar circumstances.

6. **____: ____.** Although the general standard of an attorney's conduct is established by law, the question of what an attorney's specific conduct should be in a particular case and whether an attorney's conduct fell below that specific standard is a question of fact.

7. **Attorney and Client: Expert Witnesses.** Expert testimony is generally required to establish an attorney's standard of conduct in a particular circumstance and that the attorney's conduct was not in conformity therewith.

8. **Summary Judgment.** Summary judgment proceedings do not resolve factual issues, but instead determine whether there is a material issue of fact in dispute.

9. **Summary Judgment: Expert Witnesses: Testimony.** A conflict of expert testimony regarding an issue of fact establishes a genuine issue of material fact which precludes summary judgment.

10. **Malpractice: Attorney and Client: Negligence: Proof.** In an action for legal malpractice, the plaintiff must establish that but for the alleged negligence of the attorney, the plaintiff would have obtained a more favorable judgment or settlement.

11. **Res Judicata.** The doctrine of res judicata, or claim preclusion, bars the relitigation of a matter that has been directly addressed or necessarily included in a former adjudication if (1) the former judgment was rendered by a court of competent jurisdiction, (2) the former judgment was a final judgment, (3) the former judgment was on the merits, and (4) the same parties or their privies were involved in both actions.

12. **Res Judicata: Judgments: Collateral Attack.** Res judicata will not preclude a second suit between the same parties if the forum in which the first action was brought did not have jurisdiction to adjudicate the action; stated another way, judgments entered by a court without jurisdiction are void and subject to collateral attack.

13. **Jurisdiction: Words and Phrases.** Personal jurisdiction is the power of a tribunal to subject and bind a particular person or entity to its decisions.

14. ____: ____. Subject matter jurisdiction is the power of a tribunal to hear and determine a case in the general class or category to which the proceedings in question belong and to deal with the general subject matter involved.

15. **Res Judicata: Judgments.** Summary judgments, judgments on a directed verdict, judgments after trial, default judgments, and consent judgments are all generally considered to be on the merits for purposes of res judicata.

16. **Judges: Recusal.** Under the Nebraska Revised Code of Judicial Conduct, a judge must recuse himself or herself from a case if the judge's impartiality might reasonably be questioned.

17. **Judges: Recusal: Proof.** In order to demonstrate that a trial judge should have recused himself or herself, the moving party must demonstrate that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice was shown.

Appeal from the District Court for Douglas County: Peter C. Bataillon, Judge. Affirmed.

James D. Sherrets, Diana J. Vogt, and Thomas D. Prickett, of Sherrets, Bruno & Vogt, L.L.C., for appellant.

James M. Bausch and Mary Kay O'Connor, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellees Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, L.L.P., et al.

William M. Lamson, Jr., and Cathy S. Trent-Vilim, of Lamson, Dugan & Murray, L.L.P., for appellees Govier & Milone, L.L.P., and Pamela Hogenson Govier.

Heavican, C.J., Connolly, Stephan, McCormack, and Cassel, JJ.

Stephan, J.

In this professional negligence case, Mary Kay Young, formerly Mary Kay Davis, filed a complaint against several law firms and individual attorneys who represented her in a marital dissolution proceeding. Young's former husband, Henry Davis, filed for dissolution in July 2001. While that action was pending, the parties reconciled. As part of the reconciliation, they entered into two postmarital agreements which specified how their property would be divided in the

event of a future dissolution. At the request of both parties, the district court for Douglas County approved the postmarital agreements and dismissed the dissolution proceeding without prejudice.

Subsequently, Young filed a second dissolution proceeding in which she was represented by the law firms and attorneys who are the appellees in this case. Eventually, on the advice of these attorneys, Young accepted a settlement proposal from Davis which was based upon the postmarital agreements approved in the first dissolution action, and the marriage was dissolved.

Young later brought this action in which she alleged that her attorneys were negligent in advising her to accept the settlement proposal from Davis. The district court sustained the appellees' motions for summary judgment. It reasoned that the actions of the attorneys were not the proximate cause of any damage to Young, because she could not show that her recovery in the dissolution proceeding would have been greater but for the allegedly negligent advice of the attorneys. The court specifically found that under the doctrines of res judicata and judicial estoppel, the order in the first dissolution proceeding which approved the parties' postmarital agreements was binding on the court in the second proceeding.

Young appeals. We affirm the judgment of the district court.

## I. BACKGROUND AND PROCEDURAL HISTORY

Young and Davis were married on January 7, 1989, in Omaha, Nebraska. Two children were born during the marriage.

### 1. First Dissolution Proceeding

Davis filed a petition for dissolution of the marriage on July 23, 2001, in the district court for Douglas County. Young filed a cross-petition on July 26. While this proceeding was pending, Young and Davis entered into a postmarital agreement (PMA) in which they acknowledged marital difficulties. The PMA included covenants given "in consideration of the continuation of the marriage of the parties, and in consideration of the mutual promises, waivers and releases" made by each party. The PMA provided that Davis' ownership interest in a

meatpacking company would be considered separate nonmarital property and that his salary, earnings, and stock in the company would always be considered as such.

In the PMA, the parties identified marital property, which included cash, stocks, life insurance, jewelry, automobiles, a home, and a residential lot. The total value of the listed property was more than $6.28 million. The PMA provided that in the event of divorce, Young would receive $3 million; the Jaguar automobile; and her clothing, personal effects, and jewelry. Davis would retain the other assets, including the home and the residential lot. Young agreed to renounce any claim to Davis' nonmarital assets. The PMA further provided that Young would not receive alimony or additional property. According to the PMA, any marital home acquired by either party during the continuation of the marriage would be titled in the name of the person whose separate property was used for the purchase. If they purchased property together, it was to be titled in both names as tenants in common without rights of survivorship. All income earned by either party during the continuation of the marriage was to remain separate property.

The PMA stated that each party had received the advice of counsel and was entering into the agreement freely and voluntarily, free and clear of any duress or undue influence from the other party, and with full knowledge and access to any necessary information. If either party was required to bring legal action against the other to enforce rights under the PMA, or if either attempted to challenge or set aside any term of the agreement, the prevailing party would be entitled to recover costs and expenses, including reasonable attorney fees. Each party agreed that the terms of the agreement were fair, reasonable, not unconscionable, and equitable.

The PMA was signed on November 26, 2001. On January 9, 2002, Davis was given leave to dismiss his petition for dissolution without prejudice. Young was given leave to file an amended cross-petition. In that pleading, filed on January 15, Young alleged that the marriage was irretrievably broken and should be dissolved. She also sought a declaratory judgment that the PMA was void because it was executed when she was under stress, duress, and emotional collapse and was

without control of her decisionmaking abilities. She alleged that because of her mental state, she did not knowingly, intelligently, or voluntarily execute the PMA, and that it was therefore null and void.

While Young's cross-petition was pending, Young and Davis participated in private mediation in which neither was represented by counsel. Young and Davis entered into an amended postmarital agreement (APMA) on April 17, 2002. The APMA incorporated the PMA by reference and attachment. Young signed the APMA against the advice of the attorneys who represented her in the dissolution proceeding and who are not parties to this action. The APMA included specific provisions contemplating continuation of the marriage. It provided that upon execution of the APMA and the dismissal of all pending litigation, Young and Davis would again live together with their children. They agreed to "continue participating in family counseling and/or family therapy to further facilitate their reconciliation." The APMA provided that neither it nor the PMA would be enforceable if Davis initiated a new action for dissolution or legal separation within 12 months, unless the action was based on evidence of Young's infidelity.

The APMA provided that Davis would pay the state and federal income taxes on the income Young earned from the $3 million payment she was to receive under the PMA. Young was also to receive sole ownership of the parties' residence. In the event the marriage was dissolved, Young would receive alimony of $12,500 per month for up to 10 years unless she remarried or she or Davis died. The APMA also provided that Young would receive an additional $1 million on the fourth anniversary of the execution of the APMA, regardless of whether the parties were married at the time. The APMA further provided that if either party contested its terms, the prevailing party would be responsible for paying all attorney fees and costs.

The APMA included an agreement by both parties to dismiss all pending litigation between them, including "[Young's] declaratory judgment claim," which had been filed at the time of her cross-petition for dissolution. The APMA further provided that if counsel for either party desired, the terms of the

PMA and APMA would be submitted for approval to the court in which the action was pending. Like the PMA, the APMA included representations that it was executed by both parties voluntarily, without undue influence, and with a full understanding of its terms.

At a hearing on April 23, 2002, Young and Davis presented a stipulation asking the district court to approve the terms of the PMA and APMA, to dismiss the dissolution proceeding without prejudice, and to dismiss Young's declaratory judgment claim with prejudice. The stipulation expressly stated that dismissal of Young's declaratory judgment claim with prejudice would mean she would be precluded from challenging the validity of the PMA and APMA. The stipulation was not signed by counsel for either party, although both parties were represented by counsel at the hearing.

Davis' counsel called both parties to testify regarding their understanding of the PMA and APMA. Both testified that they intended to continue in their marital relationship upon resolving their differences with the PMA and APMA and that they understood both documents, considered them fair and reasonable, and were requesting the court's approval of them. Young testified that she understood that if her declaratory judgment action was dismissed with prejudice, the APMA would be binding on her. She also testified that she understood the declaratory judgment could be dismissed without the court's approving the PMA and APMA. Further questioning by the court elicited testimony from the parties regarding their educational backgrounds and the absence of any impairment to their ability to understand the proceedings. In an order entered on April 24, 2002, the court found that it had jurisdiction of the parties and the subject matter, approved the PMA and APMA, dismissed Young's declaratory judgment claim with prejudice, and dismissed Young's amended cross-petition for dissolution of marriage without prejudice.

## 2. Second Dissolution Proceeding

Thereafter, the parties lived together for approximately 17 months. During that time, pursuant to the PMA and APMA,

Davis transferred ownership of the family residence, two automobiles, and $3 million to Young.

On October 6, 2003, Young filed a petition for dissolution of the marriage. At that time, she was represented by Pamela Govier and the law firm of Govier, Milone & Streff, L.L.P. (Govier firm), and a second law firm that is not a party to this action. The case was assigned to a district court judge who had not been involved in the prior proceedings.

In his answer and cross-petition, Davis admitted Young's allegations that the marriage was irretrievably broken and that every reasonable effort to effect reconciliation had been made. He affirmatively alleged that the PMA and APMA controlled the determination of alimony and the distribution of real and personal property and that by virtue of the 2002 order approving the PMA and APMA, Young was barred from relitigating property and alimony issues by the doctrines of res judicata, collateral estoppel, and judicial estoppel. Davis sought custody of the parties' minor children, an order granting him exclusive occupancy of his residence, a decree of dissolution incorporating the terms of the PMA and APMA, and other relief, including attorney fees and costs.

In her reply, Young alleged that the PMA and APMA were "procured by fraud, duress, and without full disclosure" and were "unconscionable, unenforceable, void, and against public policy." Davis then filed a motion for partial summary judgment, asserting that the enforceability of the PMA and APMA had already been determined by a court and again asserting that Young was estopped from challenging their validity.

The court overruled Davis' motion for summary judgment, concluding that the PMA and APMA were unenforceable because they were made in contemplation of divorce, were not consistent with "statutes regarding post-marital agreements," and were contrary to public policy. Davis filed a motion for reconsideration, which the court also overruled.

The law firm which had originally served as cocounsel with the Govier firm withdrew from the case, and in August 2004, Young retained the law firm of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, L.L.P. (Baird Holm firm), as

cocounsel with the Govier firm. William Dittrick, a partner in the Baird Holm firm, was primarily responsible for the firm's work on the case. Early in his involvement, Dittrick was advised by Govier that the district court had denied Davis' motion for partial summary judgment and had held that the PMA and APMA were unenforceable. That holding was reaffirmed in February 2006, when the district court overruled Davis' motion to bifurcate the trial in order to first determine the enforceability of the PMA and APMA. The court reaffirmed its prior order determining that the agreements were unenforceable.

But approximately 7 months later, the court, on its own motion, announced that it would reconsider its holding on Davis' motion for partial summary judgment. After additional briefing, the court reversed its prior order and sustained Davis' motion for partial summary judgment. The court reasoned that the April 2002 ruling that the PMA and APMA were fair, just, and not unconscionable is res judicata and bars further litigation between the parties.

Having prevailed on that critical issue, Davis proposed a settlement. He offered to abide by the PMA and APMA and to pay alimony of $12,500 per month for 106 months and child support of $60,000 per year for two children or $36,000 per year for one child. He also offered to waive his claim for reimbursement of $175,000 in attorney fees and waive any claim to additional attorney fees based on Young's challenge of the APMA. The offer stated that if the matter were not settled, Davis would seek reimbursement of the $175,000, payment of all attorney fees and costs expended in defense of the PMA and APMA, and reduction of alimony for a term equal to one-half the length of the parties' actual cohabitation (88 months) less a credit for the alimony paid during the proceedings. The total alimony award would extend for an additional 64 months. He also would seek return of all personal property Young removed from Davis' home.

After consultation with her attorneys, Young agreed to accept the settlement offer. Dittrick stated in a letter dated December 4, 2006, that Young believed she must accept the terms of the settlement "because of the incredible economic

risk confronting her." At a hearing on December 11, Davis testified that the parties had agreed that each would pay his or her own attorney fees and that he would not seek repayment of $175,000 that had been previously ordered by the court. Young testified that she understood she had no alternative but to accept the settlement because she would face bankruptcy if she went to trial. She said that her attorneys had explained the situation to her in great detail and that she understood that neither party would appeal the settlement. The court approved the settlement agreement and, on December 11, entered an order of dissolution incorporating the PMA and APMA.

### 3. Professional Negligence Proceeding

On November 14, 2008, Young filed this professional negligence action against the Baird Holm firm; the Govier firm, now Govier & Milone, L.L.P.; and individual members of the firms, including Dittrick and Govier. During the course of the proceeding, various other individual defendants were dismissed, and those dismissals are not at issue in this appeal.

Young alleged that the PMA and APMA were unenforceable because they were fraudulently procured by Davis, signed while she was under duress, and void as against public policy. She alleged that her attorneys, the appellees, were negligent in advising her about the PMA and APMA and in litigating issues regarding the enforceability of the agreement. She also alleged that they charged her excessive fees. She alleged that as a proximate result of their negligence, she lost the ability to appeal the enforceability of the PMA and APMA and "the ability to share in up to one-half of what [the attorneys] informed her was a $192 Million Marital Estate." She prayed for judgment against the appellees, jointly and severally; for monetary damages of $100 million; and for disgorgement of attorney fees, interest, and costs. The appellees filed answers denying all claims and asking for dismissal of the action.

The appellees filed motions for summary judgment, and Young filed a cross-motion for summary judgment. The district court overruled Young's motion, finding that there were genuine issues of material fact as to whether the appellees were negligent. However, the court granted the appellees'

motions for summary judgment in part, finding that the order approving the PMA and APMA entered in the first dissolution proceeding was binding on the court in the second dissolution proceeding under the doctrines of res judicata and judicial estoppel. The court determined that even if Young could establish negligence by the appellees, she could not prove proximate causation.

The court reserved three issues for trial: (1) whether Govier failed to convey a $2 million settlement offer to Young, (2) whether there was a failure to submit counteroffers, and (3) whether the appellees charged excessive fees. Subsequently, the district court modified its order and granted summary judgment for the appellees on the first two of the previously preserved claims, leaving only the claim regarding excessive attorney fees for trial. Eventually, the parties reached a settlement as to the attorney fees and stipulated to the entry of a final judgment, which was entered on November 1, 2011. Young perfected this timely appeal.

## II. ASSIGNMENTS OF ERROR

Young assigns, summarized and restated, that the district court erred in (1) overruling her motion for summary judgment on the issues of negligence and proximate cause, (2) sustaining the appellees' motion for partial summary judgment based upon its determination that the PMA and APMA would have been binding on the court in the second dissolution proceeding if it had not been settled, and (3) overruling her motions for recusal of the district judge.

## III. STANDARD OF REVIEW

[1] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[1]

---

[1] *Beveridge v. Savage*, 285 Neb. 991, 830 N.W.2d 482 (2013).

[2] A motion requesting a judge to recuse himself or herself on the ground of bias or prejudice is addressed to the discretion of the judge, and an order overruling such a motion will be affirmed on appeal unless the record establishes bias or prejudice as a matter of law.[2]

## IV. ANALYSIS

Professional negligence actions against attorneys typically involve a "'case within the case,'" the former being the prior lawsuit or transaction in which the attorney's negligence is alleged to have occurred.[3] Here, the case within the case is the second dissolution proceeding in which Young was represented by the appellees. She contends that they negligently advised her to settle that case after the court determined that it was bound by the first court's approval of the PMA and APMA in the first dissolution proceeding. Thus, our "case within the case" actually has within it yet another case upon which the issues in this appeal are largely focused.

[3,4] A client who has agreed to the settlement of an action is not barred from recovering against his or her attorney for malpractice if the client can establish that the settlement agreement was the product of the attorney's negligence.[4] In a civil action for legal malpractice, a plaintiff alleging professional negligence on the part of an attorney must prove three elements: (1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) that such negligence resulted in and was the proximate cause of loss to the client.[5] It is undisputed that a professional relationship existed between Young and the appellees. The issues in this appeal involve the elements of neglect of duty and proximate cause.

---

[2] *Huber v. Rohrig*, 280 Neb. 868, 791 N.W.2d 590 (2010).

[3] See *Bowers v. Dougherty*, 260 Neb. 74, 85, 615 N.W.2d 449, 457 (2000).

[4] *Wolski v. Wandel*, 275 Neb. 266, 746 N.W.2d 143 (2008); *Bruning v. Law Offices of Ronald J. Palagi*, 250 Neb. 677, 551 N.W.2d 266 (1996).

[5] *Freedom Fin. Group v. Wooley*, 280 Neb. 825, 792 N.W.2d 134 (2010); *Radiology Servs. v. Hall*, 279 Neb. 553, 780 N.W.2d 17 (2010).

### 1. Young's Motion for
### Summary Judgment

[5-7] Young argues that the district court erred in denying her motion for summary judgment and in failing to find that certain conduct by the lawyers was malpractice which proximately caused her alleged damage. In a legal malpractice action, the required standard of conduct is that the attorney exercise such skill, diligence, and knowledge as that commonly possessed by attorneys acting in similar circumstances.[6] Although the general standard of an attorney's conduct is established by law, the question of what an attorney's specific conduct should be in a particular case and whether an attorney's conduct fell below that specific standard is a question of fact.[7] Expert testimony is generally required to establish an attorney's standard of conduct in a particular circumstance and that the attorney's conduct was not in conformity therewith.[8]

[8,9] In support of her motion for summary judgment, Young presented the affidavits of attorney experts who opined that the appellees failed to meet the standard of care in advising Young to accept the settlement offer in the second dissolution proceeding. In response, the appellees submitted the affidavits of attorney experts who opined that they did not deviate from the standard of care. Summary judgment proceedings do not resolve factual issues, but instead determine whether there is a material issue of fact in dispute.[9] A conflict of expert testimony regarding an issue of fact establishes a genuine issue of material fact which precludes summary judgment.[10] Accordingly, the district court did not err in overruling Young's motion for summary judgment.

---

[6] *Radiology Servs. v. Hall, supra* note 5; *Boyle v. Welsh*, 256 Neb. 118, 589 N.W.2d 118 (1999).

[7] *Radiology Servs. v. Hall, supra* note 5; *Wolski v. Wandel, supra* note 4.

[8] *Wolski v. Wandel, supra* note 4.

[9] *Farmington Woods Homeowners Assn. v. Wolf*, 284 Neb. 280, 817 N.W.2d 758 (2012); *Conley v. Brazer*, 278 Neb. 508, 772 N.W.2d 545 (2009).

[10] See *Schiffern v. Niobrara Valley Electric*, 250 Neb. 1, 547 N.W.2d 478 (1996).

## 2. Appellees' Motions for
### Summary Judgment

[10] Young argues that the district court erred in sustaining the appellees' motions for summary judgment. This inquiry focuses on the element of proximate cause. In an action for legal malpractice, the plaintiff must establish that but for the alleged negligence of the attorney, the plaintiff would have obtained a more favorable judgment or settlement.[11] The district court determined that even if the appellees breached the standard of care as alleged by Young, she could not have received a more favorable settlement in the second dissolution proceeding, because the court was bound to enforce the PMA and APMA under the doctrines of res judicata and judicial estoppel.

### (a) Res Judicata

[11,12] The doctrine of res judicata, or claim preclusion, bars the relitigation of a matter that has been directly addressed or necessarily included in a former adjudication if (1) the former judgment was rendered by a court of competent jurisdiction, (2) the former judgment was a final judgment, (3) the former judgment was on the merits, and (4) the same parties or their privies were involved in both actions.[12] Res judicata will not preclude a second suit between the same parties if the forum in which the first action was brought did not have jurisdiction to adjudicate the action; stated another way, judgments entered by a court without jurisdiction are void and subject to collateral attack.[13]

It is clear that the validity of the PMA and APMA was directly addressed in the court's order terminating the first dissolution proceeding, which included Young's claim for

---

[11] *Bellino v. McGrath North*, 274 Neb. 130, 738 N.W.2d 434 (2007).

[12] *Kiplinger v. Nebraska Dept. of Nat. Resources*, 282 Neb. 237, 803 N.W.2d 28 (2011).

[13] *Ryan v. Ryan*, 257 Neb. 682, 600 N.W.2d 739 (1999). See, also, *Marshall v. Marshall*, 240 Neb. 322, 482 N.W.2d 1 (1992); *Zenker v. Zenker*, 161 Neb. 200, 72 N.W.2d 809 (1955); *Koch v. County of Dakota*, 151 Neb. 506, 38 N.W.2d 397 (1949); 50 C.J.S. *Judgments* § 931 (2009).

declaratory relief, and that the two dissolution proceedings involved the same parties. Thus, the focus of our inquiry is whether the order terminating the first dissolution proceeding was a final judgment on the merits by a court of competent jurisdiction.

[13,14] Personal jurisdiction is the power of a tribunal to subject and bind a particular person or entity to its decisions.[14] Subject matter jurisdiction is the power of a tribunal to hear and determine a case in the general class or category to which the proceedings in question belong and to deal with the general subject matter involved.[15] It is undisputed that the court had personal jurisdiction over the parties in the first dissolution proceeding. The disputed issue in this appeal is whether it had subject matter jurisdiction to determine the validity of the PMA and APMA.

There are two possible sources of such jurisdiction: (1) the Uniform Declaratory Judgments Act[16] and (2) the Nebraska statutes governing dissolution of marriage,[17] both of which were implicitly invoked in the amended cross-petition filed by Young in the first dissolution proceeding.

In her cross-petition filed in the first dissolution proceeding, Young requested that the district court exercise its jurisdiction under the Uniform Declaratory Judgments Act and find the PMA to be void, because it was executed at a time when she was under stress, duress, and emotional collapse and was without control of her decisionmaking abilities. She alleged that because of her mental state, she did not knowingly, intelligently, or voluntarily execute the PMA and that it was therefore null and void.

The Uniform Declaratory Judgments Act includes the following grant of subject matter jurisdiction:

---

[14] *Abdouch v. Lopez*, 285 Neb. 718, 829 N.W.2d 662 (2013).

[15] *Spady v. Spady*, 284 Neb. 885, 824 N.W.2d 366 (2012); *Peterson v. Houston*, 284 Neb. 861, 824 N.W.2d 26 (2012).

[16] See Neb. Rev. Stat. §§ 25-21,149 to 25-21,164 (Reissue 2008).

[17] See Neb. Rev. Stat. §§ 42-347 to 42-386 (Reissue 2008 & Cum. Supp. 2012).

Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a final judgment or decree.[18]

This broad authority encompasses the power to determine a party's rights under a contract, including a claim that the contract itself is invalid. Section 25-21,150 provides:

Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder.

In the context of domestic relations actions, we have previously held that a party was entitled to seek declaratory relief in order to determine rights under an agreement with a former husband made in contemplation of a divorce which had occurred in another state.[19]

As noted, Young specifically sought declaratory relief in the first dissolution proceeding when she asked the court to declare the PMA "null and void." As a court of record, the district court had subject matter jurisdiction with respect to the claim for declaratory relief.[20] The remaining question is whether the court actually exercised that jurisdiction.

---

[18] § 25-21,149.

[19] *Dorland v. Dorland*, 175 Neb. 233, 121 N.W.2d 28 (1963), *overruled on other grounds*, *Landon v. Pettijohn*, 231 Neb. 837, 438 N.W.2d 757 (1989).

[20] See, *Bituminous Casualty Corp. v. Deyle*, 234 Neb. 537, 451 N.W.2d 910 (1990); § 25-21,149.

While Young's claims for dissolution of her marriage and declaratory relief were pending before the court in the first dissolution proceeding, the parties entered into mediation and negotiation, which led to the reconciliation of the marriage and execution of the APMA. They then jointly asked the court to approve their settlement agreement, which included the PMA as amended by the APMA. In a written stipulation signed by both parties, they represented to the district court that they had "voluntarily, freely and clearly entered into the [PMA and APMA] without any duress or undue influence from the other party," and they acknowledged that the terms of the agreements were "fair, just and not unconscionable." Young then testified that she understood approval of the parties' settlement would resolve all issues in her claim for declaratory relief and result in its dismissal with prejudice, meaning she could not in the future assert that the PMA and APMA were unenforceable. The court specifically questioned Young and found her competent.

[15] We conclude that the court exercised its jurisdiction under the Uniform Declaratory Judgments Act to approve the PMA and APMA and that its order constituted a judgment on the merits denying Young's claim for a declaration that they were invalid. We have noted that summary judgments, judgments on a directed verdict, judgments after trial, default judgments, and consent judgments are all generally considered to be on the merits for purposes of res judicata.[21] This was essentially a consent judgment in which the court, at the request of both parties, made specific findings regarding the validity of the PMA and APMA and the competency and capacity of the parties to enter into them. The court dismissed Young's claim for declaratory relief with prejudice, just as it would have if it had found the PMA and APMA to be valid and enforceable in a contested proceeding.

---

[21] *DeVaux v. DeVaux*, 245 Neb. 611, 514 N.W.2d 640 (1994) (superseded by statute on other grounds as stated in *Alisha C. v. Jeremy C.*, 283 Neb. 340, 808 N.W.2d 875 (2012)). See Jack H. Friedenthal et al., Civil Procedure § 14.7 (4th ed. 2005).

Under Neb. Rev. Stat. § 25-601(1) (Reissue 2008), Young could have dismissed her declaratory judgment action *without prejudice* at any time prior to its submission to the court. Had she done so, the resulting order of dismissal would not have been a decision on the merits.[22] This was no doubt the reason Young's lawyer asked her on the witness stand if she understood that the court's approval of the PMA and APMA would result in dismissal of the declaratory judgment action with prejudice and that she had the option of dismissing the action "without the court approving these documents." Young testified that she understood.

In sum, the order approving the PMA and APMA in the first dissolution proceeding was a final judgment on the merits entered by a court of competent jurisdiction in an action in which Young and Davis were parties, and it was therefore binding upon them in the subsequent dissolution action under the doctrine of res judicata. Because the first court had subject matter jurisdiction under the Uniform Declaratory Judgments Act, we need not address whether it also had subject matter jurisdiction under the dissolution statutes. And because we conclude that the judgment had preclusive effect under the doctrine of res judicata, we need not address whether the doctrine of judicial estoppel applies.

### (b) Public Policy

Young argues that the judgment approving the PMA and APMA should not be given preclusive effect, because post-marital agreements are void as against public policy in Nebraska. This argument confuses the validity of the judgment with the validity of the underlying agreements. As we have noted, the judgment in the first dissolution proceeding was entered on the merits by a court of competent jurisdiction and meets all of the other requirements of res judicata as to Young. She therefore cannot relitigate the issues determined by that judgment, including the enforceability and validity of the PMA and APMA. Thus, even if the PMA and APMA are

---

[22] See *Smith v. Lincoln Meadows Homeowners Assn.*, 267 Neb. 849, 678 N.W.2d 726 (2004).

void as against public policy, an issue we do not decide, their void nature is inconsequential once a valid final judgment was entered approving them. No public policy considerations prevent the first judgment from having preclusive effect under the facts of this case.

### (c) Remaining Arguments

We have considered Young's remaining arguments in support of her claim that the judgment in the first dissolution proceeding should not have preclusive effect and find them to be without merit. We therefore find no error in the conclusion of the district court that the judgment in the first dissolution proceeding was entitled to preclusive effect and that therefore, the attorneys' advice that Young accept the settlement offer in the second proceeding, and thus forgo further litigation of the issue, could not have been the proximate cause of any injury or damage.

### 3. Young's Motions to Recuse

After the first district judge assigned to this case had recused himself, Young filed a motion to recuse the judge to whom the case had been reassigned. She asserted that the second judge had presided over cases in which the appellees had appeared as attorneys. That motion was overruled. Young then filed a renewed and expanded motion to recuse, in which she alleged that the second district judge, prior to his appointment to the bench, had advocated for causes to which Young and a group she headed were opposed. That motion was overruled. Young later filed another renewed motion for recusal, asserting that the judge had shown hostility toward her in several rulings which were adverse to her position. That motion was overruled as well. Young assigns that these rulings constitute reversible error.

[16,17] Under the Nebraska Revised Code of Judicial Conduct, a judge must recuse himself or herself from a case if the judge's impartiality might reasonably be questioned.[23]

---

[23] *In re Interest of Kendra M. et al.*, 283 Neb. 1014, 814 N.W.2d 747 (2012). See, also, Neb. Rev. Code of Judicial Conduct § 5-302.11(A).

In order to demonstrate that a trial judge should have recused himself or herself, the moving party must demonstrate that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice was shown.[24]

Young cites no authority in support of her argument that recusal is "customary and appropriate" where an attorney is a party to a case assigned to a judge before whom the attorney has previously appeared.[25] As the U.S. Supreme Court has stated, "'judicial rulings alone almost never constitute a valid basis for a bias or partiality motion'" directed to a trial judge.[26] Nor can a judge's ordinary efforts at courtroom administration be a basis for bias or partiality.[27] We find nothing in the district judge's rulings in this case which would be indicative of actual bias or prejudice necessitating recusal. The fact that the judge and Young took opposite sides on public policy issues before the judge was appointed to the bench does not reflect judicial bias or prejudice in a case which has no relationship to those public policy issues. We conclude that the district court did not abuse its discretion in overruling Young's motions for recusal.

## V. CONCLUSION

For the reasons discussed, we find no reversible error and therefore affirm the judgment of the district court.

Affirmed.

Wright and Miller-Lerman, JJ., not participating.

---

[24] *In re Interest of Kendra M. et al., supra* note 23.

[25] Brief for appellant at 42.

[26] *Huber v. Rohrig*, 280 Neb. 868, 875, 791 N.W.2d 590, 598 (2010) (quoting *Liteky v. United States*, 510 U.S. 540, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994)).

[27] *Id*.